Hear ye, hear ye, hear ye. The United States Court of Appeals for the 11th Circuit is now open according to law. God save the United States in the sign of the court. All right, I would say be seated, but I don't suppose you have to be seated. This is Judge Newsom. I want to welcome everybody. Thank you, Valerie, for calling us to order. We wish, of course, that we could be with you in person in Montgomery, but we appreciate you being willing to handle and argue your cases telephonically this way. Best for all involved, I think. All right, so having welcomed you to the 11th Circuit, I now want to welcome Lisa Branch and I, my colleague Lisa Branch, and I would like to welcome a visiting colleague, Judge Billy Ray. William, we call him Billy Ray, who is a District Court Judge in the Northern District of Georgia. Before that, Judge Ray was a member of the Georgia Court of Appeals. He was also on the State Superior Court in Georgia, and before that was a member of the Georgia State Senate, so he has had a very distinguished public service career. And, Judge Ray, we welcome you. We thank you for sitting with us and for helping us with our work. Yes, thanks for inviting me. All right, so to our lawyers, I think most of you have been here before, just a few preliminary instructions. You have limited time before us today, so we would ask that you dispense with pleasantries and factual recitations and procedural history and just proceed directly to the merits of your points and specifically the points that you think are most salient. Ordinarily, if we were in person, we would have a lighting system, of course. We don't have a lighting system telephonically, but Valerie, who called court to order this morning, will give you a two-minute warning when your time is set to expire. And we would simply ask you, I'm not going to cut you off mid-sentence, but that when it is announced that your time has expired, that you wrap it up. And if we have further questions for you, we will, of course, take you beyond the limit. But once the time has expired, please do wrap it up. All right, with that, we will proceed to the first case, which is 19-10267, United States of America v. Joshua Dudley. And my understanding is that we have Ms. Case here for Mr. Dudley and Mr. Krishna here for the United States. So, Ms. Case, whenever you are ready, you may proceed. I understand that you have reserved four minutes for rebuttal. Yes, thank you, Your Honor, and good morning, everyone. This is Allison Holmes on behalf of Joshua Dudley. May it please the Court and Counsel. Prior to his sentencing, Mr. Dudley objected to the application of the Armed Career Court Act, therefore shifting the burden to the government to prove that his prior assault convictions occurred on separate occasions. To meet its burden, the government could rely only on Shepard-approved sources. This Court's precedent from United States v. Smead is clear that, quote, A well-established line of cases flow from that 2010 Smead decision. Indeed, just two weeks ago, in United States v. Carter, this Court published an opinion reiterating the holding from Smead and writing for the ACCA's Different Occasions Inquiry, quote, Can I ask you a question? This is Judge Newsom. I certainly take your point about Smead, but what do you do with the government's argument from what I'll call the Weeks line of cases, for lack of a better way of describing it? It seems like there's some tension between the Weeks line and the Smead line. If the Weeks line says, basically, that under Amandares-Torres, the date of the conviction is part of sort of the fact, if you will, of conviction, and thus no Sixth Amendment sort of issue arises, why would Shepard really ever come into play in that circumstance? Yeah, I think it's because the Weeks case and actually the Carter case, too, were distinguishable in that the Shepard-approved source there, which is the charging document, which had a date. And so just even applying how Shepard defines what Shepard-approved sources are and kind of narrowing that universe, and so per se, charging documents are Shepard-approved sources. I do agree that once the universe is settled of what can properly be in front of a sentencing court, which would include an indictment, then the court can do the fact-finding. And that's what they did in Weeks. You know, there, those indictments had dates. They also had locations. And so the court looked at that information, knew that Mr. Weeks had pleaded guilty, well, had the conviction based on those indictments and could extrapolate that those were different occasions. I guess I take your point that, you know, Shepard, you say, narrows the class of documents that are sort of fair game in sort of making a sentencing determination. But isn't Shepard itself animated by Sixth Amendment concerns? And I guess my question is, if Almendarez-Torres, you know, sort of creates this sui generis exception to the Apprendi line of cases that says for the fact of conviction, we just sort of aren't worried about the Sixth Amendment, for better or worse, we're just not worried about it, and then Weeks seems to say that the date is part of the fact, if you will, of conviction, why does the Sixth Amendment and thus Shepard ever come into play? Why do we ever start talking about Shepard? Well, I think that when a court is later going to apply the ACCA enhancement and if there's been an objection, then Apprendi clearly comes into play because you're changing the statutory range that the Senate is facing, and so that's going to implicate the Sixth Amendment, and it is Sixth Amendment kind of underpinnings and concerns that Shepard recognizes whenever you are increasing the sentencing exposure for the defendant, and there is a fine line of factual finding that a federal sentencing court should later be doing. And so that's why I think Sixth Amendment and Snead and that line of cases developed, you know, Alamedares-Torres is 20 years ago now, but that Shepard is post that and has recognized the implications of the defendant's Sixth Amendment rights in the ACCA context. Okay. Very well. Proceed. Okay. And I do think that the fact in Mr. Dudley's case that the indictments underlying it have no dates, no other information that a sentencing court can extrapolate factual findings is really what kind of sets his case apart from even the Carter case, which was recently decided, where the court could look at what charges underlie those convictions. I think that the Sixth Amendment concerns recognized in Shepard, adopted by Snead, talk about you don't want to, you need conclusive significance. And so here we have the government with indictments and plea agreements with no dates, nothing to extrapolate, and we are trying to use this transcript of a plea colloquy where, you know, I think it's almost, it's undisputed that Mr. Dudley does not confirm it. And he has no motivation to. And Counsel, let me ask you a question about that. In your brief, you concede that during the 2013 plea colloquy, Mr. Dudley admitted to the facts inherent to the elements for second degree assault. First of all, how are you drawing that distinction that that's all he was admitting to? I would point to two things. I would point to when he is asked by the state court judge what his plea is, the state court judge frames it as how do you plead to quote, or the charges quote, as contained in counts. And it's referring back to counts in those indictments that do not include anything more than what is charged in those indictments. I think like any conviction, it does, it results from a guilty plea. Mr. Dudley has admitted to the facts necessary for that conviction. But what's so key here is that ACCA does not require three prior convictions. It requires three prior convictions that occurred on separate occasions. And that occurred on separate occasions must be proven to a sentencing court if a defendant has objected like Mr. Dudley did. And here there's just no conclusive evidence proffered by the government whose burden it was to establish those separate occasions. Counselor, this is Judge Ray. So how do you define what separate occasions is? It's not necessarily, or it could be the same day, couldn't it? It could be the same day, Your Honor. I believe that the case law about that is, it has to be distinct criminal episodes. Yeah, I think there are cases that talk about, it could be, you know, three different things that happen at different locations, which is why this court has sometimes looked at locations. But another thing that makes me... Counselor, I certainly understand how locations could be different, but let me give you a hypothetical. If the corrections officer had gone into the cell and had been assaulted by the defendant, and then they had gotten control of the situation, and then before he left the cell there was another assault because the defendant was able to get free and assault him again, could that constitute two separate events? Your Honor, if, you know, if there had been a plea agreement that set out where a defendant had confirmed that, yes, early in the morning this happened and later in the day, or, you know... That's a little bit different from my hypothetical. I'm talking about, you know, we'll say it's within 15 minutes. If the officer goes into the cell, for example, to check on the defendant and gets assaulted, and then other officers come into the cell, which would typically happen, and they get control of the situation, but before anyone leaves the cell, the defendant gets free of his constraints and then assaults the officer, the same officer again, couldn't that constitute a separate and distinct event? Your Honor, I believe that would be... Two minutes warning, counsel. I believe that... I believe the language from this court is about distinct criminal episodes. You know, I think that, honestly, in that situation, I could see that if the district court found it was two distinct criminal episodes, that would be an issue that would appeal, I think, to the district court as well, and a close call, but I think that... That is... Still, something... All that information of Mr. Dudley's court as a properly approved Shepard document, the universe of documents that this court can look at, because there has to be conclusive significance in what it's looking at, Mr. Dudley is sitting in a courtroom with, on New Year's Eve of 2013, where he had been in jail for more than three years, his attorney had worked out a plea agreement, he would plead guilty to several charges, he would get a certain sentence, everything's wrapped up, for the very first time, he hears some uncharged facts that were never reduced to writing, he has no motivation to speak up and rock the boat and potentially jeopardize his plea agreement, and so for this court to then use those facts to increase the statutory range of his sentence more than five years later, is... Contrary to how this court looks at conclusive documents to show that there are separate occasions. But counsel, in our Carter opinion that you referenced, we were able to look at the indictments and sort through the facts behind those indictments to see what makes sense as far as determining if they were separate offenses. And don't you have that problem here, simply by virtue just by one example, of two assaults on Officer Dandy? And because if these didn't happen, if these weren't separate offenses, wouldn't these have violated the double jeopardy clause? I mean, aren't we entitled to look at the facts underlying the two different assaults on Officer Dandy and decide that these were separate offenses? Separate occasions? Your Honor, you know, I would say no. I think it could be one melee where it is an ongoing assault. You can finish. Okay, thank you. You know, one large melee and at one point that officer is hit on one part of his body and the next part he's hit somewhere else and that is one episode. I do not think that these documents have exclusive significance that there is separate occasions. Thank you. All right, thank you very much. You've reserved four minutes. We'll give you the full four. Mr. Krishna for the government. Thank you, Your Honor. May it please the Court, Praveen Krishna for the United States. Mr. Dudley's specific assent requirement, and by which I mean his idea that a defendant must expressly agree to non-elemental facts in a factual basis before they can be used, that proposal is a solution to a problem that simply doesn't exist. Unlike the violent felony inquiry, the different occasions inquiry is intended to take account of non-elemental facts. The plain text of the different occasions clause says as much. It instructs courts to look at whether violent felonies or serious drug offenses have been committed on occasions different from one another. As Mathis instructs, when Congress tells courts to look at how or when an offense is to go beyond the element and to consider the particular circumstances of the defendant's conduct. And in fact de Camp and Mathis, they reject the very idea that's at the core of Mr. Dudley's argument, because they reject this idea that a defendant's failure to object to a non-elemental fact is somehow categorically different from an express agreement. In the world of de Camp and Mathis, which is the world of the violent felony inquiry, both forms of agreement or lack of objection are equally irrelevant. And under this court's decision in weeks, there can't be any sort of a Sixth Amendment problem in using a date or finding a date with respect to the different occasions clause, because the date of an offense is integral. It's simply part of the factual nature of the prior conviction, and thus comes in under the Almendarez-Torres line of cases. Mr. Krishna, this is Judge Newsom. So you've got weeks in Almendarez-Torres on your side, but it seems to me that Ms. Case has need building off of Shepard on her side. I mean, she basically says look, premise one, Shepard says there's this class of permissible documents, the indictment, the plea agreement, and any sort of recitation in the plea colloquy confirmed by the defendant. I don't think you'll dispute that Shepard says confirmed or assented to several times. Premise two, she says in Smead, we said, no uncertain terms, there is no daylight, no difference between the scope of the permissible evidence that can be used to determine if the prior convictions are violent felonies, or if they were committed on different occasions. So it basically takes Shepard, previously applied to the violent felony question, and applies it to the different occasions question, and conclusion, therefore, because there's no express assent or confirmation here, you can't use the unconfirmed colloquy here. Why doesn't that work? The conclusion doesn't follow, Your Honor. We agree 100% that Smead is binding. We recognize that we have to limit ourselves to Shepard documents. Shepard offers, as an example, the factual basis contained in a transcript of a plea colloquy, and that's exactly what we have here. But wait, wait, wait, wait, wait. So you're relying on there is one time that I've read Shepard that where it says the transcript of a plea colloquy without further specification, but I think there are at least three times where Shepard's pretty clear the transcript of a plea colloquy as confirmed by the defendant. Exactly. And what Shepard, I think we need to look at that in the context of the Shepard decision, because what Shepard is doing is it's trying to situate the document that might fall out of a pleaded case, and compare them on the one hand to the document that can be used in a tried case, and on the other hand, this wider evidentiary cast that the government was arguing for that would have included police reports and other sorts of things that in Shepard's view ended up, they lacked the conclusive finality, and there weren't conclusive records made in adjudicating guilt. And so when Shepard talks about the confirmation that a defendant provides, that confirmation is the guilty plea itself because it is the guilty plea that is the equivalent of the jury's verdict of guilty. Shepard says that the factual basis is the closest analog to a jury instruction. Now, when a jury renders a verdict of guilty, it never has to decide what date an offense occurred. Nevertheless, the indictment, if it contains a date, we can use that date to enhance the defendant. Did the indictment here include a date? These indictments did not, but I'm just asking, I guess, on your analogy, what good does your resort to the guilty plea do you? You were saying, you know, the guilty plea sort of includes the date, so long as the indictment includes the date. So how does the guilty plea really get it done? I mean, that's why I think we're in sort of like prong three of Shepard, where you've got to say the narrative as confirmed by the defendant, because the guilty plea doesn't give it to you, and the indictment doesn't give it to you. Right. I meant, when I was talking about the indictment, I just meant in a hypothetical case, in any case where if Mr. Dudley had gone to trial and his indictment did have dates, the jury would have never confirmed those guilty. That was my point. But Shepard does say that Rule 11, the factual basis in Rule 11, that counts as a Shepard document, and Rule 11 says nothing about whether a district court or whether a court accepting a plea needs to ask the defendant whether the factual basis is accurate. It can do so, but it isn't required to do so. In fact, Rule 11 says that the court only needs to determine whether there's a factual basis before entering judgment. So it can actually accept the guilty plea and then determine whether there's a factual basis. And I think it's also, I think this aspect of treating the confirmation as simply the plea of guilty, that becomes clearer if we read Shepard in line with Komp and Mathis. Because in each of these cases, the court is looking at the same fundamental question, which is whether the defendant's conviction under a non-generic burglary statute amounts to a conviction for generic burglary. And in Shepard, there are several times where the court refers to factual findings assented to by the defendant, or a factual finding that is adopted by the defendant. And taken in isolation, that certainly sounds exactly like what Mr. Dudley is suggesting, that he needs to agree to some sort of a fact in order for it to be used for his enhancement. But de Komp says expressly that if the defendant agrees to a fact, that's irrelevant if that fact isn't tethered to an element. And so the confirmation that Shepard is talking about always has to be a confirmation of the element, which is to say it is the guilty plea itself. And especially in this context where Shepard is adamant that there's nothing in the ACCA, there's no basis to treat tried cases and pleaded cases differently. By the same token, there is no basis, and certainly nothing to sort of create this artificial division in pleaded cases between those cases where the court happens to ask the defendant about the accuracy of the factual basis, or those cases where the court obtains the factual basis through another means, when both are perfectly legitimate ways of securing a guilty plea. Instead, what confirmation means is simply the guilty plea, and that is exactly what we have here. And in fact, even if we were to adopt Mr. Dudley's views of the record and of the law, and what confirmation really means, we would still meet those tests, because in this case, the prosecutor recited two dates, asked the defense counsel, is that correct? The defense counsel agreed that those two dates were correct. The district court then asked for further clarification, asked for a time sequence. The prosecutor read the further three dates, and then there was no objection at any point, and Mr. Dudley pleaded guilty. Well, it sounds like, I mean, it sounds there that you've got confirmation as to two, maybe, but not confirmation as to three. If we're reading Shepard as requiring express confirmation separate and apart from the guilty plea, then under the colloquy as you just described, that you've got confirmation as to two. Well, I think under this court's McLeod decision, we can infer that the two dates listed implies that the third is a date that is separate from the other two. In McLeod, which is very similar to what we have here, the court that accepted the plea asked the prosecutor for facts about the crimes at issue. The prosecutor identified a factual basis which provided one location, and McLeod took the view that that, at most, indicated that there were two separate offenses, because the identification of one location implies that the other two offenses took place at least one other location. Mr. Chris, I'm sorry. I thought you were done. Oh, no, not at all, Your Honor. I was just going to wrap up. Oh, go ahead. I have not had a sentencing involving this statute since I've been a federal judge. The question I have is related to that. Could the district court judge have accepted evidence on when these events actually occurred? In other words, could he have required the government to bring forth some evidence other than just through the colloquy of when the three different events occurred? Not outside of the universe of Shepard documents. We couldn't put on witnesses or find the case agent in the original state of cases in order to prove up this case. We would be limited to the indictment or the plea colloquy or the plea agreement depending on what's available. That, in essence, then puts in context the district court's statement about accepting the trial courts where you find them. Clearly, the state trial judge would not have been concerned about the issue that we're concerned about. That's right. At the same time, I think the fact that there's such a variety here. First of all, in terms of the issue that Mathis identifies in terms of the incentives for giving or incentives for a defendant to not object, here we have a district court that was concerned about the time sequence the prosecutor answered that question. There's no reason to presume that that answer was false or certainly on a preponderance by the evidence standard. Again, there really is no rule that requires courts accepting pleas to ask the defendant whether the factual basis is correct. That's something they have the option to do, but they aren't required to do it. It would create a great deal of disuniformity if the ability to enhance somebody based on the ACCA is going to be dependent on how a court decided to conduct its plea colloquy one day. This is Judge Newsom. I guess I would have thought you referenced what the Supreme Court said in Mathis and DeCamps. I guess I would have thought that the whole reason that we have in Shepard if you read the three cases together, that the reason that Shepard articulates this what I'll call express confirmation requirement is because of what the court said in Mathis and DeCamps that you can't expect a defendant to have any incentive to speak up or to object to some extraneous fact during the plea colloquy. Well, I don't think that's quite right, Your Honor, because DeCamps says quite expressly, and this is at page 265 of the opinion, that the defendant, at least the government argued the defendant, expressly agreed that he had committed this generic burglary, and he was convicted under a statute that didn't require a breaking and entering element of burglary, but he admitted that in the course of his commission of that state offense, he did in fact break and enter the place that provided the location where he was convicted. I guess what I mean is so if we're talking about the plea colloquy here, we're talking about dates or instances, you know, DeCamps says during plea hearings the defendant may not wish to irk the prosecutor or the court by squabbling about superfluous factual allegations. DeCamps says or Mathis says at trial and still more at plea hearings, the defendant may not have an incentive to contest what does not matter under the law. On the contrary, he may have good reason not to. So, I mean, I guess I'm just trying to sort of put myself under the shoes of the defendant during the colloquy as the prosecutor is rattling off dates which are not relevant to the elements of the conviction. Why would he raise his hand? Sure. Well, I guess my first point would be that DeCamps' skepticism comes from the standpoint of looking at whether something has been proven beyond a reasonable doubt. And so it's perfectly consistent on the one hand to say that these facts might not matter so much, that the defendant might be silent, there's room for inaccuracy, and that's why we don't think that this has been proven beyond a reasonable doubt. But that doesn't mean that we fail to provide a preponderance of evidence. And in this case, as Judge Branch pointed out, he actually would have had a powerful incentive to challenge some of the dates because he was convicted of two offenses. Argument has expired. You can finish up, Mr. Krishna. Thank you, Your Honor. He was convicted of two offenses with the same victim in the same location, and so the date is really the only thing that would separate them and protect them against a double jeopardy challenge. Thank you, Your Honor. Thank you. Ms. Keiths, you have four minutes remaining. Okay. Thank you, Your Honor. I did look up to questions by Judge Ray and Judge Branch. The standard for separate occasions, there's actually a quote in Sneed that the three previous occasions arose out of separate and distinct criminal episodes. And here, I think to the extent the Court's considering whether one victim was mentioned in two counts, I think that is not conclusive evidence or even a preponderance that that would be more than two separate assault episodes. McLeod says if it's equally likely, then it's not enough. The other point I wanted to make is I think Mr. Krishna said that the defendant's lawyer said that's correct after the state court prosecutor read some facts, or not even read them, it looks like orally recited them off the top of her head. But the context is actually on page 11 of that document, 26-1, and all she said is, did I miss anything? And the lawyer said that's correct, but I don't think it did cover jail credit? So I don't think that should also be read as one, the defense lawyer agreeing that it was correct, nor two, attributed necessarily to Mr. Dudley. I also want to emphasize there's a difference between indictments and plea agreements, which are reduced to writing, have a lot of procedural safeguards, are given notice to a defendant, versus oral recitation of facts during that plea hearing that a defendant, one, has no motivation to object to, are not elements, and in this case already has an agreement with the government of how the case is going to be resolved in a stipulated sentence, and there's no indication the judge was not going to accept it. Counselor, this is Judge Ray. If I could ask you about that last statement you made about no motivation to object to, if in fact it was all the same criminal episode, wouldn't the defendant have a motivation to object? No, Your Honor. I don't think so. I mean, I think that what we can tell, even just from looking at the plea agreements, is that, and what's said by his attorney at the hearing, is that a plea has been worked out to a 10-year sentence, where he's actually going to have a probation hearing, like in a month and a half, where he would just get out. And we're dealing with an individual who with not much education, standing in court with lawyers and judges, and knows that he has already signed a plea agreement that did not include any extra facts and that the case is going to be resolved if he just says, yes, I want to plead guilty to how I was charged. And so to speculate whether he had motivation to do something or not I think is just getting into this gray area of a federal court later making factual findings from things that are inconclusive and should not be allowed to raise the statutory range of his sentence. Unless the court has any other questions, I'd be happy to answer them, but we do ask that you find that the district court improperly determined that these were separate, that the government proved that these were separate criminal episodes and vacated his sentence and that there was a lack of enhancement. Okay. Hearing none, thank you so much, Ms. Case. Mr. Krishna, well presented on both sides. That case is submitted.